THE PEOPLE OF THE STATE OF NEW YORK EX REL. REBECCA JONES, APPELLANT, v. ALEXANDER V. DAVIDSON, AS SHERIFF, ETC., RESPONDENT.

*Contempt — the refusal of a witness to answer questions may be punished either criminally or civilly — Code of Civil Procedure, sec. 8, sub. 5; sec. 14, sub. 5; sec. 2285 — length of the confinement — form of the commitment.*

The contumacious and unlawful refusal of a person who has been sworn as a witness, to answer any legal and proper interrogatory, may be punished criminally as a violation of subdivision 5 of section 8 of the Code of Civil Procedure, or civilly as a violation of subdivision 5 of section 14 thereof.

The relator having been sworn as a witness in a proceeding pending in the Surrogate's Court of New York, and having refused to answer certain questions put to her was committed to the county jail for a criminal contempt. The commitment, after reciting that the relator had been convicted by the Surrogate's Court of contempt for a contumacious and unlawful refusal to answer certain legal and proper interrogatories propounded to her as a witness, directed that "she stand there committed, there to remain, charged with the said contempt as aforesaid, until she shall make answer to such legal and proper interrogatories *as shall be propounded to her as a witness in this cause.*"

*Held,* that the commitment was invalid; that the confinement should have been limited to the time when the witness was willing to answer the questions *which had been actually propounded to her,* and for a refusal to answer which she had been convicted of contempt.

Although it is not necessary that the questions which the witness has refused to answer should be set out *in hæc verba* in the commitment, yet it is the better practice to so set them out.

APPEAL from an order of one of the justices of the Supreme Court, dismissing a writ of *certiorari* and remanding the relator.

472  PEOPLE ex rel. JONES v. DAVIDSON.

FIRST DEPARTMENT, MARCH TERM, 1885.

*Wm. H. Shepard*, for the relator, appellant.

*Franklin Bartlett*, for the respondent.

DAVIS, P. J.:

The relator in this case was adjudged by the Surrogate's Court to be guilty of contempt in refusing to answer certain questions put to her after she had been sworn as a witness in a proceeding pending in that court for the probate of the last will and testament of Louis C. Hammersley, deceased. The contempt was committed in open court and the refusal of the witness to answer was contumacious and unlawful. By the provisions of the Code of Civil Procedure, the relator's misconduct could have been treated as a criminal contempt under section 8 of the Code, or as a contempt punishable civilly under section 14. Subdivision 5 of section 8 defines a contumacious and unlawful refusal to be sworn as a witness, or after being sworn to answer any legal and proper interrogatory as a criminal contempt, and subdivision 5 of section 14 defines a refusal to be sworn or to answer as a witness as a contempt that may be punishable civilly. It follows as a matter of course that a witness guilty of this kind of contempt, to wit, a contumacious and unlawful refusal to answer any legal and proper question, renders himself liable to be punished either criminally or civilly in the discretion of the court. The sheriff in this case has returned the writ of commitment under which he holds the relator in custody. That recites an order of the surrogate which in substance convicted the relator of a criminal contempt, and undoubtedly justified proceedings to punish her by and under the civil proceedings provided by section 14, if the surrogate deemed that the better course. The relator having omitted to bring up by her *certiorari* the order of the surrogate, no inference can be made or claimed that the order does not fully sustain the recitals of the writ of commitment, and it is our duty, therefore, to consider that the conviction of the relator of contempt in refusing to answer as a witness was in all respects legal and proper.

The only questions that arise upon the return relate to the extent and form of the punishment imposed by the order as recited in the commitment. They are regulated and prescribed by section 2281, 2282, 2283, 2284 and 2285 of the Code of Civil Procedure which con-

fer power both to fine and imprison the convicted party. Section 2284 provides for the imposition of a fine where actual loss or injury is shown, sufficient to indemnify the aggrieved party in a case where he has no action for his damages by law ; and where no actual loss or injury is shown, by the imposition of a fine not exceeding the complainant's costs and expenses, and $250 in addition thereto. Section 2285 provides that " where the misconduct proved consists of an omission to perform an act or duty which it is yet in the power of the offender to perform, he shall be imprisoned only until he has performed it, and paid the fine imposed." In such a case, the order and the warrant of commitment, if one is issued, must specify the act or duty to be performed. In every other case, when special provision is not otherwise made by law, the offender may be imprisoned for a reasonable time, not exceeding six months, and until the fine, if any, is paid ; and the order and warrant of commitment, if any, must specify the amount of the fine and the duration of the imprisonment.

It is under this section that the warrant of commitment in this case was issued. Its recitals show that the relator was convicted, by the Surrogate's Court, of contempt, " for the contumacious and unlawful refusal of said Rebecca Jones, after being sworn as a witness in the said proceeding to answer the certain legal and proper interrogatories propounded to her as a witness * * * on the 19th day of May, 1884," and ordered that she be committed to the county jail for such contempt. It was not necessary, we think, to have recited the questions in hæc verba, either in the order or writ of commitment, though that would be the better practice. It was sufficient to describe them as the questions propounded to her and which she refused to answer on that day, and to commit her until she should answer those questions, the refusal to answer which constituted her offense. Had the writ of commitment done this, we should have been able to uphold it as a compliance with section 2285 of the Code ; but, unfortunately, it does not. The recital from the order proceeds, after stating the conviction, in these words : " And that she stand there committed, there to remain, charged with the said contempt, as aforesaid, until she shall make answer to such legal and proper interrogatories as shall be propounded to her as a witness in this cause." And the mandate to the sheriff, based upon

this recital, is, that he keep her safely and closely in his custody, "in the common jail of the county of New York, until she shall purge herself of the contempt aforesaid, and make answer to such legal and proper interrogatories which may be propounded to her as a witness in the proceedings aforesaid." Unfortunately, this recital and mandate do not comply with the requirement of the statute. The relator's contempt consisted in her refusal to answer the questions actually propounded to her on the nineteenth of May, and not in refusing to answer such questions as may or shall be thereafter put to her as a witness in the proceeding. She was entitled at any moment to purge her contempt by paying her fine and going into court and answering *the questions* which had been propounded and refused on that day. If she should then refuse to answer other proper questions, she would be guilty of a new contempt and might then again be punished, but she could not be adjudged guilty of that contempt until the exigency arose. The statute is explicit that where the contempt is an omission to perform an act or a duty which it is yet in the power of the offender to perform, he shall be imprisoned only until he has performed it. The act or duty of the relator in this case was to answer the questions propounded to and refused by her on the 19th day of May, 1884. It was yet in her power to perform that act or duty as the surrogate, we must assume, continued the case for that purpose. The statute is also explicit that the order and the warrant of commitment "must specify the act or duty to be performed and the sum to be paid," so that by payment and performance of those specified things, the party convicted of the criminal contempt, can promptly terminate his imprisonment. But this writ of commitment is not of that character. The relator under its mandate could not at any time pay her fine and demand to terminate her imprisonment by going before the surrogate and answering the questions she had refused to answer (though that was doubtless the intention) because the writ of commitment required, and the order *as recited*, also required that she should answer "such legal and proper interrogatories as shall be propounded to her as a witness in this cause" and "make answers to such legal and proper interrogatories which may be propounded to her as a witness in the proceeding aforesaid." Neither the process nor the

order as recited gave her the opportunity to purge her contempt and terminate her imprisonment, as the provisions of the Code prescribed, by doing the things she had refused to do ; that is simply to answer the questions actually put on the nineteenth of May.

In order to entitle her to her discharge according to the exigency of the writ she must under the order and writ not only answer the questions if propounded, in respect of which she is in contempt, but all other legal and proper interrogatories that " shall " or " may " be propounded to her, in respect of which she is not in contempt. There is no question but that the relator's contempt was marked, obstinate and altogether without excuse. There is no call for any sympathy in her case. The learned surrogate doubtless treated her will all the consideration due to her sex and condition, and gave her every opportunity to escape the consequences of her own folly. When it became his manifest duty to punish her singular and persistent obstinacy, he did so with a commendable firmness which deserves approbation. It is to be regretted that the process of commitment was not prepared for his signature with a closer observation of the requirements of the Code. While we feel constrained to hold that the writ is so far irregular as not to warrant the longer imprisonment of the relator, we are glad to say that there is nothing in the case that will prevent the witness from being brought again into court for examination and on a like refusal to testify, being subjected to whatever punishment is necessary to make her obedient to the primary duty under our government and laws of every good citizen when brought as a witness into a court of justice, which is to speak " the truth, the whole truth and nothing but the truth," touching the subject-matter of a controversy. If the power to compel this did not exist, then justice might be defeated in every effort to redress the wrongs and enforce the rights of litigants.

The order appealed from must be reversed and an order entered discharging the relator from custody under the writ of commitment, but without costs.

Daniels, J., concurred.

Present — Davis, P. J., and Daniels, J.

Order reversed and prisoner discharged.